IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HEATHER EZELL and MICHELE STOLL, *on behalf of themselves and all those similarly situated,* § § § § § § Plaintiffs,, § § v. § § HEIGHTS HEALTHCARE OF TEXAS, § LLC *d/b/a* WHITE ROCK MEDICAL § CENTER; NCP MANAGEMENT, LLC; § MIRZA BAIG; TERRY FOKAS; § NATIONAL PAYROLL SERVICES, LLC § BLUE CROSS BLUE SHIELD OF TEXAS § § Defendants. § | Civil Action No. _____ |

## CLASS ACTION COMPLAINT

On behalf of themselves and other similarly situated individuals, Plaintiffs Heather Ezell and Michele Stoll bring this Class Action Complaint for violations of the WARN Act, ERISA, and COBRA.

On April 30, 2024, 158 hard working employees at White Rock Medical Center (over one-third of the workforce at that hospital facility) were summarily laid off without any advance notice. To add insult to injury, they later learned that for the two months preceding their layoff, their employer had been taking money out of their paychecks for health insurance premiums, but not actually remitting those premium payments to the insurance provider. As a result, their health insurance coverage was retroactively canceled effective March 1, 2024. Many of these employees have now been charged out of pocket for the medical services they received during that two-month

period, despite the fact that they were dutifully paying their premiums. And to make matters even worse, they have been denied their right to ongoing COBRA benefits.

As a result of Defendants' reprehensible actions, 158 healthcare heroes were fired without a safety net and with substantial unexpected medical debt. This was all foreseeable, and easily preventable, by Defendants. Defendants chose an unethical and illegal path that put "profits over people." Plaintiffs now seek to hold Defendants accountable for that choice.

**I.      Parties, Jurisdiction, and Venue:**

1.     Plaintiff Heather Ezell is an individual residing in Dallas, Texas who was formerly employed at White Rock Medical Center in Dallas, Texas. She was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and health and welfare plans at issue in this case.

2.     Plaintiff Michele Stoll is an individual residing in Mesquite, Texas who was formerly employed at White Rock Medical Center in Dallas, Texas. She was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and health and welfare plans at issue in this case.

3.     Defendant Heights Healthcare of Texas, LLC (*d/b/a* White Rock Medical Center) is a domestic limited liability company that owns and operates the White Rock Medical Center hospital facility in Dallas, Texas. It may be served through its registered agent for service of process in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

4.     Defendant NCP Management, LLC is a domestic limited liability company. It is a sponsor of the health and welfare plans at issue in this case. It is also named as Plaintiff's employer in the "Benefits Guide" distributed to employees at White Rock Medical Center. It may be served through its registered agent for service of process in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

5. Defendant National Payroll Services, LLC is a domestic limited liability company. It is named as Plaintiffs' employer on W2 forms filed with the Internal Revenue Service. It is also a Plan Administrator of the health and welfare plans at issue in this case. It can be served via its registered agent for service of process in Texas: Paracorp Incorporated, 14001 W Hwy Suite 102, Liberty Hill, TX 78642.

6. Defendant Mirza Baig is the CEO of White Rock Medical Center. He is also one of two members/managers of Heights HealthCare of Texas, LLC (the only other member/manager is his relative, Yusuf Baig), the sole member/manager of Defendant NCP Management, LLC, the sole member/manager of Defendant National Payroll Services, LLC, and a fiduciary of the health and welfare benefit plans at issue in this case. He may be served at 10857 Kuykendahl Road, Ste 120, The Woodlands, TX 77382, 19500 TX-249 Suite 560, Houston, TX 77070-77070 USA, 811 Marshal Falls Dr., Spring, TX 77379, or wherever else he may be found

7. Defendant Terry Fokas is the Chief Restructuring Officer of White Rock Medical Center and a fiduciary of the health and welfare benefit plans at issue in this case. He sent the letter terminating Plaintiffs' employment. He may be served at 5906 Flintshire Ln, Dallas, TX 75252-5133, or wherever else he may be found.

8. Defendant Blue Cross Blue Shield of Texas is the health insurance provider for White Rock Medical Center and Plaintiffs (and the other employees working at White Rock Medical Center). It may be served through its registered agent for service of process in Texas: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

9. Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claims under the WARN ACT, 29 U.S.C. § 2101, et seq., and the Employee Retirement Income Security Act, 29 U.S. C. § 1001 et seq. ("ERISA").

10. Venue is proper in the Northern District of Texas, Dallas Division pursuant to 29 U.S.C. § 2104(a)(5) because the WARN Act violation occurred in Dallas, Texas, and under 29 U.S.C. § 1132(e) (2) because each of the ERISA Defendants can be found in Dallas County.

## II.     Facts:

11. On April 30, 2024, White Rock Medical Center suddenly, without any advance notice or warning, laid off Plaintiffs Heather Ezell and Michele Stoll, along with approximately 156 other employees.

12. The mass layoff caused more than 33 percent of White Rock Medical Center's employees to lose their jobs.

13. White Rock Medical Center knew that the WARN Act applied to their mass layoff of employees, and that the WARN Act required it to provide 60 days' notice to employees prior to a mass layoff like this one.

14. On April 30, 2024, White Rock Medical Center issued a layoff letter to Plaintiffs Ezell and Stoll and approximately 156 others. It titled the electronic document: "WARN Notice to Non-union Employees."

15. In the letter, White Rock Medical Center claimed that it was unable to provide the 60-day notice required by the WARN Act due to "unforeseeable circumstances" related to ongoing litigation between White Rock Medical Center and the hospital's former ownership group.

16. The circumstances that resulted in the layoff were not, however, unforeseeable.

17. The dispute between White Rock Medical Center and the hospital's former ownership group pre-dated January 25, 2024 - the day White Rock Medical Center attempted and failed to mediate its dispute with the hospital's former ownership group.

18. White Rock Medical Center then filed its own lawsuit against the former hospital ownership group on February 5, 2024, after the hospital ownership group filed an arbitration demand against White Rock Medical Center on February 2, 2024.

19. By the beginning of January 2024, White Rock Medical Center had every reason to know that it was facing serious financial threats likely to result in a layoff.

20. Yet, White Rock Medical Center failed to give 60 days advanced notice of the layoff to its impacted employees.

21. From March 1, 2024 through April 29, 2024, White Rock Medical Center continued to charge Plaintiffs Ezell, Stoll and the 156 other laid off employees their employee share of health insurance premiums, and to deduct those charges from the employees' paychecks.

22. White Rock Medical Center did not, however, remit those insurance premiums to its insurance carrier Blue Cross Blue Shield of Texas.

23. White Rock Medical Center also failed to remit its employer share of insurance premiums for the 158 laid off employees to Blue Cross Blue Shield of Texas for the months of March 2024 and April 2024.

24. White Rock Medical Center's health and welfare benefit plans required it to remit both the employer and employee share of health insurance premiums for its eligible employees to Blue Cross Blue Shield of Texas for March 2024 and April 2024.

25. Because White Rock Medical Center failed to remit the required premiums, Blue Cross Blue Shield retroactively canceled the employees' health insurance coverage effective March 1, 2024.

26. White Rock Medical Center never notified Plaintiff Ezell or Plaintiff Stoll at any time during March 2024 or April 2024 that White Rock Medical Center was no longer remitting insurance premiums to Blue Cross and Blue Shield of Texas.

27. White Rock Medical Center never notified Plaintiff Ezell or Plaintiff Stoll at any time during March 2024 or April 2024 or even in the April 30, 2024 layoff letters about any discontinuation or retroactive cancellation of their insurance.

28. Plaintiff Heather Ezell had a number of expensive health procedures during the months of March 2024 and April 2024.

29. Plaintiff Michelle Stolle also had visits with her doctors and labs taken during the months of March 2024 and April 2024.

30. Plaintiff Heather Ezell, Plaintiff Michele Stoll, and the other laid off employees all believed they were full insured throughout March 2024 and April 2024.

31. Plaintiff Ezell and Plaintiff Stoll eventually learned from Blue Cross and Blue Shield of Texas that their insurance coverage had been retroactively discontinued as of March 1, 2024 due to White Rock Medical Center's failure to pay premiums.

32. But by the time Plaintiffs Ezell and Stoll received that information from Blue Cross Blue Shield, they had already received healthcare treatment thinking they had health insurance coverage for the visits, tests, and procedures when they in fact did not.

33. Plaintiff Ezell started to receive Explanation of Benefit notices from Blue Cross and Blue Shield of Texas stating she owed thousands of dollars for medical procedures in March and April 2024 due to White Rock Medical Center's failure to pay premiums.

34. Plaintiff Stoll also started to receive Explanation of Benefit notices of Blue Cross and Blue Shield of Texas stating she owed over a thousand dollars for medical treatment in March and April 2024 due to White Rock Medical Center's failure to pay premiums.

35. Throughout March 2024 and April 2024, Plaintiff Ezell, Plaintiff Stoll and the other laid off employees were entitled to health insurance coverage from White Rock Medical Center under the terms of White Rock Medical Center's health and welfare benefit plan.

36. Upon their layoff, under COBRA, Plaintiff Ezell, Plaintiff Stoll, and the other laid off employees should have been entitled to elect and pay for continued health insurance coverage under the same group policy that covered them during their employment.

37. Instead, because of White Rock Medical Center's failure to pay the premiums for March and April 2024, Plaintiff Ezell, Plaintiff Stoll, and the other laid off employees are being denied their right to COBRA continued health insurance coverage.

38. Plaintiff Ezell had already met her deductible under White Rock Medical Center's health and welfare plan and requires additional medical treatment that will be extremely expensive without continued health insurance coverage under COBRA.

39. White Rock Medical Center knows the dire financial and medical situation it has created for its laid off employees yet has not remedied the situation by paying the back premiums due to Blue Cross Blue Shield of Texas.

### III. Count One – Violation of the WARN Act

*(Against Defendants Heights Healthcare of Texas, LLC,
NCP Management, LLC, and National Payroll Services, LLC)*

40. Defendant Heights Healthcare of Texas, LLC is an employer as defined by the WARN Act.

41. Defendants National Payroll Services, LLC and NCP Management, LLC are jointly and severally liable under the WARN Act because they are legally a "single employer" along with Heights Healthcare, LLC.

42. Defendants Heights Healthcare of Texas, LLC, National Payroll Services, LLC and NCP Management, LLC (collectively, the "WRMC Defendants") have common ownership, are all managed by Mirza Baig (who has de facto control over the three entities and their employment decisions), they all have the same health and welfare benefit plan rules and policies and other personnel policies, and interdependent operations. And, they are interchangeably identified as the Plaintiffs' employers in various tax and benefits documents.

43. On April 30, 2024, the WRMC Defendants engaged in a "mass layoff" as defined by the WARN Act by laying off more than 50 employees and more than 33 percent of its workforce at a single site of employment.

44. Under the WARN Act, the WRMC Defendants were required to give employees 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

45. The WRMC Defendants failed to give the employees impacted by the mass layoff 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

46. No exceptions to the advance notice requirements apply to the circumstances that led the WRMC Defendants to engage in the mass layoff.

47. The circumstances that led to the layoff were not only reasonably foreseeable to the WRMC Defendants but actually fully known to the WRMC Defendants well before the date that notice under the WARN Act would have been required.

48. the WRMC Defendants is therefore liable to Plaintiffs Ezell and Stoll, as well as the class, for 60 days of back pay and 60 days of benefits, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

49. Plaintiffs additionally seek the recovery of reasonable attorney's fees as part of their costs for enforcing their rights under the WARN Act.

### IV. Count Two – Denial of ERISA Benefits (ERISA 29 U.S.C. § 1132(a)(1)(b))

*(Against Defendants Heights Healthcare of Texas, LLC, NCP Management, LLC, and National Payroll Services, LLC)*

50. The WRMC Defendants denied Plaintiffs and the class benefits they were entitled to under Section 1132(a)(1)(b) of ERISA and the health and welfare benefit plans that covered them while they were employees of the WRMC Defendants.

51. The WRMC Defendants had a health and welfare benefits plan, by which it provided health insurance coverage to eligible employees at White Rock Medical Center including Plaintiff Ezell and Plaintiff Stoll.

52. Defendant NCP Management, LLC was the policyholder of the health insurance policy that covered the employees of Heights Healthcare of Texas, LLC.

53. On information and belief, Heights Healthcare of Texas, LLC, NCP Management, LLC, and National Payroll Services, LLC were all plan sponsors of the health and welfare benefit plan that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage.

54. The WRMC Defendants are accordingly liable under Section 1132(a)(l)(b) of ERISA for all health insurance coverage due, but not provided, to Plaintiffs for the months of

March and April 2024 and pursuant to COBRA, as well as Plaintiffs' attorney's fees, expenses and costs of court.

## V. Count Three – Breach of Fiduciary Duty
### (ERISA 29 U.S.C. §§ 1104, 1105, 1109, 1132(a)(1), & 1132(a)(3))

*(Against ALL Defendants)*

55. Defendants breached their fiduciary duties to Plaintiffs and the class under Sections 1132(a)(1), 1132(a)(3), 1104, 1105 and 1109 of ERISA.

56. As plan sponsors and plan administrators of the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center, the WRMC Defendants each had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

57. As CEO of White Rock Medical Center and a managing member of each of the WRMC Defendants, Mirza Baig had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

58. Specifically, Mirza Baig had control over making decisions about the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

59. As Chief Restructuring Officer for Heights Healthcare of Texas, LLC, Terry Fokas also had decision-making authority and administrative control over the health and welfare benefit

plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

60. Terry Fokas was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

61. Blue Cross Blue Shield of Texas, as the provider of the policy that covered the employees of White Rock Medical Center, including Plaintiffs Ezell and Stoll, also had a fiduciary duty to notify Plaintiffs Ezell and Stoll that they did not have coverage and/or that their coverage had been retroactively rescinded as soon as Blue Cross Blue Shield of Texas became aware that White Rock Medical Center was in default on its premium payments.

62. Baig, Fokas, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remit health insurance premiums deducted from these employees paychecks to Blue Cross and Blue Shield of Texas, and instead diverting, misusing, and stealing those funds from employees.

63. Baig, Fokas, and the WRMC Defendants breached their fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remit the employer portion of premiums to Blue Cross and Blue Shield of Texas despite such payments being required by the health and welfare benefit plan.

64. Baig, Fokas, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's

health and welfare benefit plan by failing to remedy the situation and work out a deal with Blue Cross Blue Shield of Texas to have the insurance coverage of Plaintiffs Ezell and Stoll and other laid off employees reinstated and their medical bills covered per the terms of the applicable plan and policy.

65. Baig, Fokas, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to notify Plaintiffs Ezell and Stoll and other laid off employees that their premium payments were not remitted to Blue Cross Blue Shield of Texas, that their health insurance was retroactively canceled or why, or what if anything was being done to rectify the situation.

66. Blue Cross Blue Shield of Texas breached its fiduciary and co-fiduciary duty to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to timely notify Plaintiffs Ezell and Stoll and other laid off employees that they did not have coverage, despite knowing that the other Defendants had not notified said employees of the nonpayment of premiums or retroactive cancellation of their healthcare coverage, and instead delaying such notifications until such time as it sought to charge the employees the full cost of medical services provided to them, and, further, by not making reasonable efforts to remedy the fiduciary breaches of the other Defendants.

67. As a result of Defendants' breach of their fiduciary duties to Plaintiffs and other similarly situated laid off employees, Plaintiffs and similarly situated employees have suffered actual harm including the loss of benefits to which she was otherwise entitled, the exposure to substantial medical bills that otherwise would have been covered, the inability to make decisions to delay medical care or find alternative coverage, and a lack of COBRA coverage that will cause

significant financial and/or medical harm to those employees like Plaintiff Ezell who are in need of additional surgery and medical treatment and/or prescriptions for ongoing medical conditions.

68. As a remedy for Defendants' breach of its fiduciary duties to Plaintiffs, Plaintiff seeks all monetary, injunctive, and equitable relief to which they may be entitled, including an order to use plan assets and premiums paid by employees for purposes of the plan, an order to pay Blue Cross and Blue Shield of Texas all past premiums due to obtain a reinstatement of coverage for all employees, or payment of all medical bills that should have been paid under the terms and conditions of the applicable plan and policy.

## VI. Count Four:  Violation of COBRA  (ERISA 29 U.S.C. §§ 1161, 1162, 1132(a)(1)

*(Against Defendants Heights Healthcare of Texas, LLC,
NCP Management, LLC, and National Payroll Services, LLC)*

69. The WRMC Defendants have denied Plaintiffs and the class COBRA coverage to which they are entitled under Sections 1161, 1162, and 1132(a)(1) of ERISA.

70. The WRMC Defendants separately or together as single or joint employers have 20 or more employees and are employers within the meaning of COBRA.

71. Federal law required the WRMC Defendants to offer COBRA benefits (continued healthcare coverage) to Plaintiffs and to the other employees impacted by the mass layoff.

72. Federal law required the WRMC Defendants to report the qualifying event of Plaintiffs' and the class' terminations to Defendants' plan administrator within 30 days of their termination.

73. Federal law required the WRMC Defendants and Blue Cross Blue Shield of Texas to provide Plaintiffs notice of their eligibility to elect continued health insurance coverage under COBRA.

74. The WRMC Defendants and Blue Cross Blue Shield of Texas failed to provide Plaintiffs COBRA benefits and the notices required by COBRA and thus violated Plaintiffs' COBRA rights.

75. The WRMC Defendants and Blue Cross Blue Shield of Texas are therefore liable to Plaintiffs and all other similarly situated employees for damages Plaintiff incurred as a result of Defendants' failure to provide COBRA coverage, for $110 per day penalties under 29 U.S.C. § 1132(c), and for Plaintiff's reasonable attorney fees and costs.

## VII.   CLASS ACTION ALLEGATIONS:

77. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

78. Plaintiffs were discharged without cause on their part and are "affected employees" within the meaning of Section 2101(a)(5) of Title 29 of the United States Code.

79. The Named Plaintiffs bring this civil action on behalf of themselves and, pursuant to Section 2104(a)(5) of Title 29 of the United States Code and Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of all other similarly situated "affected employees" [as that term is defined in Section 2101(a)(5) of Title 29 of the United States Code] who worked at the White Rock Medical Center facility.

80. The class of "affected employees" who worked at the White Rock Medical Center facility [as that term is defined in Section 2101(a)(5) of Title 29 of the United States

Code] are so numerous that joinder of all such persons is impracticable within the meaning of Federal Rule of Civil Procedure 23(a)(1).

81    There are questions of law or fact common to this class within the meaning of Federal Rule of Civil Procedure 23(a)(2).

82.   The claims of the Named Plaintiffs are typical of the claims of this class within the meaning of Federal Rule of Civil Procedure 23(a)(3).

83.   The Named Plaintiffs and undersigned counsel will fairly and adequately protect the interests of the class within the meaning of Federal Rule of Civil Procedure 23(a)(4).

84.   The questions of law or fact common to this class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy referenced herein within the meaning of Federal Rule of Civil Procedure 23(b)(3).

85.   The proposed classes are defined as follows:

> (A)   Named Plaintiffs, and all other similarly situated former employees of the WRMC Defendants who were employed in the Dallas, Texas "White Rock Medical Center" facility on April 29, 2024, and who were first notified on or about April 30, 2024 of their termination and who did not receive 60 days' notice of the layoff, or 60 days of pay and benefits in lieu thereof; and

> (B)   Named Plaintiffs, and all other similarly situated former employees of the WRMC Defendants who are or were employed in the Dallas, Texas "White Rock Medical Center" facility after February 28, 2024, and who had premiums for the employer-sponsored Blue Cross Blue Shield health insurance plan deducted from their paychecks after March 1, 2024, and whose health insurance coverage was canceled or rescinded as a result of the WRMC Defendants' failure to remit premium payments to Blue Cross Blue Shield.

86.   Plaintiffs reserve the right to amend and refine the class definitions above or to add classes and/or subclasses as litigation progresses.

## VIII. JURY DEMAND

87. In accordance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues raised in this civil action that are triable of right (or choice) by a jury.

WHEREFORE, Plaintiffs ask that this Court certify a class action, and grant all similarly situated Plaintiffs judgment against Defendants for all appropriate monetary, equitable, and injunctive relief available to them under the WARN Act, ERISA, and COBRA.

Plaintiffs demand a trial by jury on all causes of action that are subject to trial by jury.

Dated: June 7, 2024

Respectfully submitted,

**TREMAIN ARTAZA PLLC**

By: */s/ Christine A. Hopkins*
Christine A. Hopkins
Texas State Bar No. 24095768
Ashley E. Tremain
Texas State Bar No. 24066209

4925 Greenville Ave, #200
Dallas, TX 75206
christine@tremainartaza.com
ashley@tremainartaza.com

Telephone:  469-573-0229
Facsimile:   214-254-4941

**ATTORNEYS FOR PLAINTIFFS**