**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HEATHER EZELL, MICHELE STOLL,** | § | |
| **and THOMAS SHORES** *on behalf of* | § | |
| *themselves and all those similarly situated,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:24-cv-01373-S** |
| | § | |
| **HEIGHTS HEALTHCARE OF TEXAS,** | § | |
| **LLC** *d/b/a* **WHITE ROCK MEDICAL** | § | |
| **CENTER; NCP MANAGEMENT, LLC;** | § | |
| **MIRZA BAIG; TERRY FOKAS;** | § | |
| **NATIONAL PAYROLL SERVICES, LLC;** | § | |
| **BLUE CROSS BLUE SHIELD OF TEXAS;** | § | |
| **NATIONAL PAYROLL SERVICES, LLC** | § | |
| **MEDICAL PLAN; NPS MANAGEMENT** | § | |
| **AE OF SECURE YOUR RETIREMENT** | § | |
| **401K PLAN; WHITE ROCK MEDICAL** | § | |
| **CENTER, LLC; and RASHID SYED** | § | |
| | § | |
| **Defendants.** | § | |

## ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT

Now come Defendants, Heights Healthcare of Texas, LLC, d/b/a White Rock Medical Center, NCP Management, LLC, National Payroll Service, LLC (incorrectly named as National Payroll Services, LLC), Mirza Baig, Terry Fokas, National Payroll Service, LLC Medical Plan (incorrectly referred to as National Payroll Services, LLC Medical Plan, the Secure Your Retirement 401(k) Plan (incorrectly identified as NPS Management AE of Secure Your Retirement 401K Plan), White Rock Medical Center, LLC, and Rashid Syed (collectively, "Defendants"), by and through their undersigned counsel, and for their Answer to the First Amended Complaint ("Complaint"), state as follows:

## PLAINTIFFS' INTRODUCTION PARAGRAPH

On behalf of themselves and other similarly situated individuals, Plaintiffs Heather Ezell, Michele Stoll, and Thomas Shores bring this Class Action Complaint for violations of the WARN Act, ERISA, and COBRA.

On April 30, 2024, 158 hard working employees at White Rock Medical Center (over one-third of the workforce at that hospital facility) were summarily laid off without any advance notice. To add insult to injury, they later learned that their employer had been taking money out of employee paychecks for health insurance premiums and 401K contributions, but not actually remitting those premium payments to the insurance provider or to employees' 401K accounts. As a result, the health insurance coverage for all White Rock Medical Center employees was retroactively canceled effective March 1, 2024, and many employees also lost 401K earnings on contributions that should have hit their 401K accounts in April and May of 2024, but were instead retained by White Rock Medical Center for the employers' own use. Many employees were also charged out of pocket for the medical services they received during March and April, despite the fact that they were dutifully paying their premiums during that time. And to make matters even worse, those employees who were laid off have been denied their right to ongoing COBRA benefits.

As a result of Defendants' reprehensible actions, 158 healthcare heroes were fired without a safety net, many current and former employees of the hospital were left with substantial unexpected medical debt and losses to their 401K retirement savings account. All of these adverse impacts were foreseeable, and easily preventable, by Defendants. Defendants chose an unethical and illegal path. Plaintiffs now seek to hold Defendants accountable for that choice.

<u>**RESPONSE TO PLAINTIFFS' INTRODUCTION PARAGRAPH**</u>

Defendants admit that Plaintiffs attempt to assert claims under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et. seq. ("ERISA") and the WARN Act, 29 U.S.C. § 2101, et seq., ("WARN Act") and Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), but deny that Plaintiffs are entitled to any remedy or relief. Other than as expressly admitted below, Defendants deny all allegations in Plaintiffs' Introduction Paragraph, and specifically deny that Defendants have violated ERISA, the WARN Act, or COBRA.

## I.      <u>PARTIES, JURISDICTION, AND VENUE</u>

1.      Plaintiff Heather Ezell is an individual residing in Dallas, Texas who was formerly employed at White Rock Medical Center in Dallas, Texas.  She was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and health and welfare plans at issue in this case.

**<u>ANSWER:</u>**    In response to paragraph 1, Defendants admit that at one time Plaintiff Ezell was an employee of White Rock Medical Center ("WRMC") residing in Dallas, Texas and was provided health care benefits under the National Payroll Service, LLC Medical Plan (the "Medical Plan"). Defendants deny the remaining allegations in paragraph 1 of the Complaint.

2.      Plaintiff Michele Stoll is an individual residing in Mesquite, Texas who was formerly employed at White Rock Medical Center in Dallas, Texas.  She was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and health and welfare plans at issue in this case.

**<u>ANSWER:</u>**    In response to paragraph 2, Defendants admit that at one time Plaintiff Stoll was an employee of WRMC residing in Mesquite, Texas, and provided health care benefits under the Medical Plan. Defendants deny the remaining allegations in paragraph 2 of the Complaint.

3.      Plaintiff Thomas Shores is an individual residing in Dallas, Texas, who is a current employee at White Rock Medical Center in Dallas, Texas. He was a beneficiary of the Blue Cross Blue Shield of Texas health insurance policy and remains a current beneficiary of the 401K plan and health and welfare benefit plans at issue in this case.

**ANSWER:**      In response to paragraph 3, Defendants admit that at one time Plaintiff Shores was an employee of WRMC residing in Dallas, Texas, and provided health care benefits under the Medical Plan and was a participant in the Secure Your Retirement 401(k) Plan ("401K Plan"). Defendants deny the remaining allegations in paragraph 3 of the Complaint.

4.      Defendant Heights Healthcare of Texas, LLC (*d/b/a* White Rock Medical Center) ("White Rock Medical Center" or "WRMC" herein) is a domestic limited liability company that owns and operates the White Rock Medical Center hospital facility in Dallas, Texas.  It may be served through its registered agent for service of process in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

**ANSWER:**      Defendants admit the allegations in paragraph 4 of the Complaint.

5.      Defendant NCP Management, LLC is a domestic limited liability company. It is a sponsor of the health and welfare plans at issue in this case. It is named as Plaintiff's employer in the "Benefits Guide" distributed to employees at White Rock Medical Center. It may be served through its registered agent for service of process in Texas: LegalInc Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033.

**ANSWER:**      Defendants admit that NCP Management, LLC is a domestic liability company and may be served through Legal Inc. Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033. Defendants state that the written "Benefits Guide" is a written document and is the best evidence of its terms. Defendants deny the allegations in paragraph 4 to the extent that they

are incomplete or inconsistent with the "Benefits Guide." Defendants deny any allegations in paragraph 5 that are not expressly admitted.

6.      Defendant National Payroll Services, LLC is a domestic limited liability company. It is named as Plaintiffs' employer on W2 forms filed with the Internal Revenue Service.  It is also a Plan Administrator of the health and welfare plans at issue in this case. It can be served via its registered agent for service of process in Texas: Paracorp Incorporated, 14001 W Hwy Suite 102, Liberty Hill, TX 78642.

**ANSWER:**      Defendants admit that National Payroll Service, LLC is a domestic liability company and may be served through Legal Inc. Corporate Services, 10601 Clarence Dr., Suite 250, Frisco, TX 75033. Defendants state that the W2 forms filed with the internal Revenue Service are the best evidence of who is identified as the employer. Defendants state that the Medical Plan documents are the best evidence of who is identified as the Plan Administrator. Defendants deny the allegations in paragraph 6 to the extent that they are incomplete or inconsistent with the W2 forms or the Medical Plan Documents. Defendants deny any allegations in paragraph 6 that are not expressly admitted.

7.      Defendant National Payroll Services, LLC Medical Plan (a/k/a National Payroll Services, LLC Group Health Plan) is a health and welfare benefit plan that Defendants identified in their answer as providing benefits to Plaintiffs and other current and former employees of White Rock Medical Center.

**ANSWER:**      Defendants admit that National Payroll Service, LLC Medical Plan provided health coverage for Plaintiffs and certain other employees. Defendants deny the remaining allegations in paragraph 7 of the Complaint.

8.      Defendant NPS Management, AE of Secure Your Retirement 401K Plan is the name of the 401K Plan for Plaintiff Thomas Shore and other White Rock Medical Center employees according to 401K account statements issued by The Standard to Mr. Shores and other employees.

**ANSWER:**    Defendants admit the allegations in paragraph 8 of the Complaint

9.      Defendant Mirza Baig is the CEO of White Rock Medical Center.  He is also one of two members/managers of Heights HealthCare of Texas, LLC (the only other member/manager is his relative, Yusuf Baig), the sole member/manager of Defendant NCP Management, LLC, the sole member/manager of Defendant National Payroll Services, LLC, the sole member/manager of White Rock Medical Center, LLC, and a fiduciary of the 401K and health and welfare benefit plans at issue in this case.  He may be served at 10857 Kuykendahl Road, Ste 120, The Woodlands, TX 77382, 19500 TX-249 Suite 560, Houston, TX 77070-77070 USA, 811 Marshal Falls Dr., Spring, TX 77379, or wherever else he may be found.

**ANSWER:**    Defendants admit that Mirza Baig, MD has accepted service in this matter, and that Dr. Baig is one of two members/managers of Heights HealthCare of Texas, LLC, the sole member/manager of NCP, NPS, and WRMC. Defendants deny that Dr. Baig is a fiduciary of the Medical Plan, 401K Plan, or any employee benefit plans.

10.     Defendant Terry Fokas is the Chief Restructuring Officer of White Rock Medical Center and a fiduciary of the 401K and health and welfare benefit plans at issue in this case. He sent the letter terminating Plaintiffs' employment.  He may be served at 5906 Flintshire Ln, Dallas, TX 75252-5133, or wherever else he may be found.

**ANSWER:**    Defendants admit that Terry Fokas is the Chief Restructuring Officer and General Counsel of WRMC. Defendants admit that Mr. Fokas has been served in this matter.

Defendants deny that Mr. Fokas is a fiduciary of the Medical Plan, the 401K Plan, or any employee benefit plans.

11.     Defendant White Rock Medical Center, LLC (*f/k/a* Pipeline East Dallas LLC) ("WRMC, LLC" herein) is part of an integrated enterprise together with WRMC.  Mirza Baig is its sole Member/Manager. It uses *d/b/a* names of "Heights Hospital" and "Peak Heights Surgicare." According to Dallas County deed records, WRMC owns all of the membership interests in WRMC, LLC, which in turn owns the hospital located at 9440 Poppy Drive, Dallas TX.  WRMC, LLC can be served via its registered agent, LEGALINC CORPORATE SERVICES INC., at 10601 CLARENCE DR., SUITE 250 FRISCO, TX 75033.

**ANSWER:**     Defendants admit that White Rock Medical Center, LLC ("WRMC LLC") owns the subject hospital, and that service has been accepted. Defendants deny the remaining allegations in paragraph 11 of the Complaint.

12.     Defendant Rashid Syed is the Chief Operating Officer of White Rock Medical Center and a fiduciary of the 401k and health and welfare benefit plans at issue in this case. He may be served at 6340 N. Eldridge Parkway, Suite N201, NCP Admin, Houston, TX 77041, or wherever else he may be found.

**ANSWER:**     Defendants admit that Rashid Syed is the CEO of WRMC and has accepted service. Defendants deny the remaining allegations in paragraph 12 of the Complaint.

13.     Defendant Blue Cross Blue Shield of Texas is the health insurance provider for White Rock Medical Center and Plaintiffs (and the other employees working at White Rock Medical Center).  It may be served through its registered agent for service of process in Texas: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

**ANSWER:**     Defendants are without information or knowledge sufficient to form a belief as to how Defendant Blue Cross Blue Shield of Texas can be served. Defendants admit that Blue Cross Blue Shield of Texas issued Group Policies to fund, in part, benefits provided under the Medical Plan. Defendants deny the remaining allegations in paragraph 13 of the Complaint.

14.     Jurisdiction is proper on the ground of the existence of a federal question under 28 U.S.C. § 1331 based on Plaintiff's claims under the WARN ACT, 29 U.S.C. § 2101, et seq., and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA").

**ANSWER:**     Defendants admit the Court has jurisdiction under and the WARN Act but deny that Plaintiffs are entitled to any remedy or relief.

15.     Venue is proper in the Northern District of Texas, Dallas Division pursuant to 29 U.S.C. § 2104(a)(5) because the WARN Act violation occurred in Dallas, Texas, and under 29 U.S.C. § 1132(e) (2) because each of the ERISA Defendants can be found in Dallas County.

**ANSWER:**     Defendants admit that venue is proper in the United States District Court for the Northern District of Texas. Defendants deny that Defendants violated ERISA or the WARN Act. Defendants deny all remaining allegations in paragraph 15 of the Complaint.

## II.     FACTS

16.     On April 30, 2024, White Rock Medical Center suddenly, without any advance notice or warning, laid off Plaintiffs Heather Ezell and Michele Stoll, along with approximately 156 other employees.

**ANSWER:**     In response to paragraph 16 of the Complaint, Defendants admit that in a letter dated April 30, 2024, White Rock Medical Center, notified Plaintiffs, and some other employees that their employment with White Rock would end. The April 30, 2024, letter is set forth in writing and

provides the best evidence of its contents. Defendants deny the remaining allegations in paragraph 16 of the Complaint.

17.     The mass layoff caused more than 33 percent of White Rock Medical Center's employees to lose their jobs.

**ANSWER:**     Defendants state that the term "mass layoff" is a legal conclusion to which no response is required, and therefore Defendants deny same. Further, Defendants admit that numerous employees were terminated in late April 2024. Defendants deny the remaining allegations in paragraph 17 of the Complaint.

18.     White Rock Medical Center knew that the WARN Act applied to their mass layoff of employees, and that the WARN Act required it to provide 60 days' notice to employees prior to a mass layoff like this one.

**ANSWER:**     Defendants admit that WRMC issued a letter compliant with the WARN Act on April 30, 2024, in the event the WARN Act applied, as it was the best notice practicable under the circumstances. The remaining allegations in paragraph 18 are denied because they state a legal conclusion to which no response is required.

19.     On April 30, 2024, White Rock Medical Center issued a layoff letter to Plaintiffs Ezell and Stoll and approximately 156 others. It titled the electronic document: "WARN Notice to Non-union Employees."

**ANSWER:**     In response to paragraph 19, Defendants admit that WRMC issued a letter to Plaintiffs Ezell and Stoll on April 30, 2024. The letter is set forth in writing and provides the best evidence of its contents. Defendants deny the remaining allegations in paragraph 19 of the Complaint.

20.    In the letter, White Rock Medical Center claimed that it was unable to provide the 60-day notice required by the WARN Act due to "unforeseeable circumstances" related to ongoing litigation between White Rock Medical Center and the hospital's former ownership group.

**ANSWER:**    In response to paragraph 20, Defendants state that the April 30, 2024, letter is set forth in writing and provides the best evidence of its contents. Defendants deny the remaining allegations in paragraph 20 of the Complaint.

21.    The circumstances that resulted in the layoff were not, however, unforeseeable.

**ANSWER:**    Defendants deny the allegations in paragraph 21 of the Complaint.

22.    White Rock Medical Center had every reason to know, well before April 30, 2024, that it was facing financial and operational difficulties.

**ANSWER:**    Defendants deny the allegations in paragraph 22 of the Complaint

23.    Indeed, by the beginning of January 2024, White Rock Medical Center had every reason to know that it was facing serious financial and operational threats likely to result in a layoff.

**ANSWER:**    Defendants deny the allegations in paragraph 23 of the Complaint.

24.    Specifically, a legal dispute between White Rock Medical Center and the hospital's former ownership group ("SRC") erupted sometime in late 2023.

**ANSWER:**    Defendants admit there was a legal dispute with Heights Healthcare of Texas, LLC the former owner of the hospital. Defendants deny the remaining allegations in paragraph 24 of the Complaint.

25.    SRC is the former owner of the Hospital.  It sold the Hospital to WRMC in September 2023.  WRMC paid $9M for the Hospital.  It paid $3.600,000 upfront.  WRMC was then supposed to pay (2) $2.4M on October 31, 2023; and then $250,000 per quarter after that.  Under their agreement, SRC had a lien over WRMC's assets, and could forcelose on those assets if WRMC

failed to pay.  SRC also agreed to provide ongoing operations services for the Hospital's revenue software, health records, and other IT functions, in exchange for payments from WRMC.

**ANSWER:**   Defendants admit that Heights Healthcare WRMC purchased the membership interests in the hospital pursuant to the terms of a written agreement that provides the best evidence of the complete terms and conditions of the transaction. Defendants deny the remaining allegations in paragraph 25 of the Complaint.

26.   WRMC did not make the payments as promised.

**ANSWER:**   Defendants deny the allegations in paragraph 26 of the Complaint.

27.   On January 25, 2024, White Rock Medical Center attempted and failed to mediate its dispute with SRC.

**ANSWER:**   Defendants admit there was a failed attempt to mediate the dispute. Defendants deny the remaining allegations in paragraph 27 of the Complaint.

28.   On February 2, 2024, SRC filed an arbitration demand against White Rock Medical Center, making it clear that SRC was seeking cessation of its services, and a foreclosure on WRMC's assets, as a remedy for WRMC's failure to pay.   SRC scheduled a public auction of the assets for February 7, 2024.

**ANSWER:**   Defendants admit that beginning in February of 2024, Heights Healthcare engaged in an arbitration process with the hospital's former ownership. The pleadings filed in that arbitration are set forth in writing and provide the best evidence of the nature of those proceedings. Defendants deny the remaining allegations in paragraph 28 of the Complaint.

29.   On February 5, 2024, White Rock Medical Center then filed its own lawsuit against the former hospital ownership group.

**ANSWER:**    Defendants admit that beginning in February of 2024, Heights Healthcare filed a petition for a temporary restraining order which documents are set forth in writing and provide the best evidence of the nature of those proceedings. Defendants deny the remaining allegations in paragraph 29 of the Complaint.

30.    The court filings submitted by WRMC's own experienced legal counsel on WRMC's behalf show that WRMC knew, as early as February 5, 2024, that it was facing an uphill battle to keep the hospital afloat, and that SRC intended to cease providing services by the end of March, and that SRC planned to foreclose on, and to publicly sell, certain major assets that were necessary to the hospital's function within 90 days.

**ANSWER:**    Defendants admit that the pleadings filed in the litigation are set forth in writing and provide the best evidence of the nature of those proceedings. Defendants deny the remaining allegations in paragraph 30 of the Complaint.

31.    By February 5, 2024, it was therefore entirely foreseeable that it would be necessary for WRMC to implement substantial cost-cutting measures such as a mass layoff.

**ANSWER:**    Defendants deny the allegations in paragraph 31 of the Complaint.

32.    White Rock Medical Center, at the time, was represented by a seasoned labor and employment attorney quite familiar with the WARN Act and its requirements, due to 30 years of experience serving as "a trusted, strategic adviser to companies throughout the country in a full range of labor and employment matters."   It is highly likely, therefore, that WRMC would have been advised by this time of the requirements of the WARN Act.

**ANSWER:**    Defendants deny the allegations in paragraph 32 of the Complaint which call for a legal conclusion and improperly attempt to invade the attorney/client privilege.

33.     WRMC also had a mechanic's lien filed against it in January of 2024 because it could not pay a vendor who had done work on the building.  That same month, they were sued by a Physicians Group for over a million dollars in damages, because of WRMC's failure to pay those doctors.  In February 2024, WRMC's landlord had to file a lien against WRMC for over $800,000 in back rent charges, and locked them out of their offices, for repeated failures to make rent.  On March 1, 2024, WRMC was sued by its landlord for that same (longstanding) failure to pay rent on the hospital building.  That same month, they were sued by HHS Facilities Management, for its failure to pay over half a million dollars owed for services rendered.

**ANSWER:**     Defendants admit that any liens or lawsuits filed would be set forth in writing and provide the best evidence of their contents. Defendants deny the remaining allegations in paragraph 33 of the Complaint.

34.     During this same time frame, WRMC also knew that it was several months behind on paying its employer share of health insurance payments for its employees.

**ANSWER:**     Defendants deny the allegations in paragraph 34 of the Complaint

35.     In short, it was abundantly clear by and even before March 1, 2024 that WRMC owed money all over town, could not pay even its most basic bills, and was bordering on financial and operational ruin.

**ANSWER:**     Defendants deny the allegations in paragraph 35 of the Complaint.

36.     Yet, White Rock Medical Center refused to give its employees any notice of the potential for a layoff.

**ANSWER:**     Defendants deny the allegations in paragraph 36 of the Complaint.

37.     Instead, it chose to string the employees along, getting every last working hour out of them while diverting money out of employee paychecks for the hospital's own expenses.

**ANSWER:**   Defendants deny the allegations in paragraph 37 of the Complaint.

38.     In the "WARN Act" letter it sent out to its employees that day, WRMC referred to the layoff with the subject line: "<u>Planned</u> Reduction in Force."

**ANSWER:**   Defendants admit that the letter is set forth in writing and provides the best evidence of its contents. Defendants deny the remaining allegations in paragraph 38 of the Complaint.

39.     From March 1, 2024 through April 29, 2024, White Rock Medical Center continued to charge Plaintiffs Ezell, Stoll and all of its employees their employee share of health insurance premiums, and to deduct those charges from the employees' paychecks.

**ANSWER:**   Defendants admit that consistent with the terms and requirements of the Medical Plan, WRMC continued to deduct employee contributions for health care benefits from employee paychecks through April 29, 2024, and used those contributions to fund benefits provided by the Medical Plan. Defendants deny that WRMC charged employees for health insurance premiums or deducted health insurance premiums from employees' paychecks from March 1, 2024 through April 29, 2024. Defendants deny the remaining allegations in paragraph 39 of the Complaint.

40.     White Rock Medical Center did not, however, remit those insurance premiums to its insurance carrier Blue Cross Blue Shield of Texas.

**ANSWER:**   Defendants deny that insurance premiums were due to Blue Cross Blue Shield of Texas from March 1, 2024, through April 29, 2024, and therefore deny the allegations of paragraph 40 of the Complaint

41.     White Rock Medical Center also failed to remit its employer share of insurance premiums for its employees to Blue Cross Blue Shield of Texas for the months of March 2024 and April 2024.

**ANSWER:**    Defendants deny that insurance premiums were due to Blue Cross Blue Shield of Texas from March 1, 2024, through April 29, 2024, and therefore deny the allegations of paragraph 41 of the Complaint.

42.    White Rock Medical Center's health and welfare benefit plans required it to remit both the employer and employee share of health insurance premiums for its eligible employees to Blue Cross Blue Shield of Texas for March 2024 and April 2024.

**ANSWER:**    Defendants deny the allegations of paragraph 42 of the Complaint.

43.    Because White Rock Medical Center failed to remit the required premiums, Blue Cross Blue Shield retroactively canceled the health insurance coverage of all of White Rock Medical Center's 460 employees effective March 1, 2024.

**ANSWER:**    Defendants admit that Blue Cross Blue Shield canceled Group Policy 297055 effective March 1, 2024. Subsequently, White Rock continued to fund the Medical Plan from White Rock's general assets and the employee contributions, consistent with the terms of the Medical Plan. Defendants deny any and all further allegations in paragraph 43 of the Complaint.

44.    White Rock Medical Center never notified Plaintiff Ezell or Plaintiff Stoll at any time during March 2024 or April 2024 that White Rock Medical Center was no longer remitting insurance premiums to Blue Cross and Blue Shield of Texas.

**ANSWER:**    Defendants deny that notice was required because Plaintiffs continued to be covered under the Medical Plan.

45.    White Rock Medical Center never notified Plaintiff Ezell or Plaintiff Stoll at any time during March 2024 or April 2024 or even in the April 30, 2024 layoff letters about any discontinuation or retroactive cancellation of their insurance.

**ANSWER:**     Defendants deny that notice was required because Plaintiffs continued to be covered under the Medical Plan.

46.     Plaintiff Heather Ezell had a number of expensive health procedures during the months of March 2024 and April 2024.

**ANSWER:**     Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 46 of the Complaint, and therefore deny the same.

47.     Plaintiff Michelle Stolle also had visits with her doctors and labs taken during the months of March 2024 and April 2024.

**ANSWER:**     Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 47 of the Complaint, and therefore deny the same.

48.     Plaintiff Heather Ezell, Plaintiff Michele Stoll, and other White Rock Medical Center employees all believed they were full insured throughout March 2024 and April 2024.

**ANSWER:**     Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 48 of the Complaint, and therefore deny the same.

49.     Plaintiff Ezell and Plaintiff Stoll eventually learned from Blue Cross and Blue Shield of Texas that their insurance coverage had been retroactively discontinued as of March 1, 2024 due to White Rock Medical Center's failure to pay premiums.

**ANSWER:**     Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 49 of the Complaint, and therefore deny the same.

50.     But by the time Plaintiffs Ezell and Stoll received that information from Blue Cross Blue Shield, they had already received healthcare treatment thinking they had health insurance coverage for the visits, tests, and procedures when they in fact did not.

**ANSWER:**   Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 50 of the Complaint, and therefore deny the same.

51.   Plaintiff Ezell started to receive Explanation of Benefit notices from Blue Cross and Blue Shield of Texas stating she owed thousands of dollars for medical procedures in March and April 2024 due to White Rock Medical Center's failure to pay premiums.

**ANSWER:**   Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 51 of the Complaint, and therefore deny the same.

52.   Plaintiff Stoll also started to receive Explanation of Benefit notices of Blue Cross and Blue Shield of Texas stating she owed over a thousand dollars for medical treatment in March and April 2024 due to White Rock Medical Center's failure to pay premiums.

**ANSWER:**   Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 52 of the Complaint, and therefore deny the same.

53.   Throughout March 2024 and April 2024, Plaintiff Ezell, Plaintiff Stoll and other White Rock Medical Center employees were entitled to health insurance coverage from White Rock Medical Center under the terms of White Rock Medical Center's health and welfare benefit plan.

**ANSWER:**   Defendants admit that the written Medical Plan is the best evidence of the terms for eligibility for coverage under the terms of the Medical Plan. Defendants deny the allegations in paragraph 53 to the extent that they are incomplete or inconsistent with the Medical Plan.

54.   Upon their layoff, under COBRA, Plaintiff Ezell, Plaintiff Stoll, and the other laid off employees should have been entitled to elect and pay for continued health insurance coverage under the same group policy that covered them during their employment.

**ANSWER:**   The allegations in paragraph 54 are denied because they state a legal conclusion to which no response is required.

55.     Instead, because of White Rock Medical Center's failure to pay the premiums for March and April 2024, Plaintiff Ezell, Plaintiff Stoll, and the other laid off employees are being denied their right to COBRA continued health insurance coverage.

**ANSWER:**   Defendants deny the allegations in paragraph 55 of the Complaint.

56.     Plaintiff Ezell had already met her deductible under White Rock Medical Center's health and welfare plan and requires additional medical treatment that will be extremely expensive without continued health insurance coverage under COBRA.

**ANSWER:**   Defendants have insufficient knowledge or information from which to form a belief as to the truth of the allegations in paragraph 56 of the Complaint, and therefore deny the same.

57.     White Rock Medical Center knew the dire financial and medical situation it created for its current and former employees yet did not remedy the situation by paying the back premiums due to Blue Cross Blue Shield of Texas, or quickly paying people for their losses.

**ANSWER:**   Defendants deny the allegations in paragraph 57 of the Complaint.

58.     In an attempt to placate its current employees, WRMC stated in an internal HR communication, as recently as June 17, 2024, that Blue Cross Blue Shield had provided them with "copies of all provider claims," and that "we paid the claims directly. No employee was denied any service during those months, nor were any claims not paid and processed."

**ANSWER:**   Defendants admit that the written communications with employees provide the best evidence of their contents. Defendants deny the remaining allegations in paragraph 58 of the Complaint.

59.     That statement, however, was undisputedly false.

**ANSWER:**   Defendants deny the allegations in paragraph 59 of the Complaint.

60.     Plaintiff Ezell and Plaintiff Stoll's claims, as well as other employees' claims, have not been paid, and, in fact, WRMC has sent out other communications claiming Blue Cross Blue Shield did not provide adequate information for WRMC to pay the claims, and admitting that medical claim reimbursements still have not actually been made.

**ANSWER:**   Defendants admit that the written communications with employees provide the best evidence of their contents. Defendants deny the remaining allegations in paragraph 60 of the Complaint.

61.     As for the laid off employees, in addition to not receiving prior notice of their layoff, some employees like Plaintiff Heather Ezell did not timely receive COBRA notices within 44 days of the April 30, 2024 layoff.

**ANSWER:**   Defendants deny the allegations in paragraph 61 of the Complaint.

62.     Further, the COBRA Notices that were sent did not contain any information about what healthcare coverage, if any, employees would receive if they paid their COBRA premiums. When Plaintiffs Stoll and Plaintiff Ezell received their COBRA notices, all they knew was that Blue Cross Blue Shield had denied coverage of all of their medical claims from March and April of 2024 on the basis that "health insurance premiums had not been received."

**ANSWER:**   Defendants admit that the written communications with employees provide the best evidence of their contents. Defendants deny the remaining allegations in paragraph 62 of the Complaint.

63.     Despite knowing that the 158 laid off employees would have deadlines to elect COBRA coverage and would have to pay expensive premiums to receive such coverage, White Rock Medical Center did nothing to inform the laid off employees whether paying COBRA premiums

would actually get the employees anything at all - or, if instead, their COBRA premiums, like the March and April premiums taken out of their paychecks, would disappear into a black hole leaving them without coverage and bearing the sole financial responsibility for their medical bills.

      **ANSWER:**    Defendants deny the allegations in paragraph 64 of the Complaint.

64.    Overall, WRMC engaged in a consistent pattern and practice of hiding and misrepresenting important facts about its benefit plans and plan assets from its former and current employees.

      **ANSWER:**    Defendants deny the allegations in paragraph 64 of the Complaint.

65.    Beginning in April of 2024, White Rock Medical Center also failed to consistently remit the 401K contributions deducted from its employees' paychecks to the employee's 401K accounts with The Standard.

      **ANSWER:**    Defendants deny the allegations in paragraph 65 of the Complaint.

66.    Specifically, on April 12, 2024, White Rock Medical Center deducted a $191.71 401K contribution from Plaintiff Thomas Shores' paycheck, but as of July 1, 2024 still had not deposited that money in Plaintiff Thomas Shores' 401K account with The Standard.

      **ANSWER:**    Defendants deny the allegations in paragraph 66 of the Complaint.

67.    On May 10, 2024, White Rock Medical Center deducted another $188.14 401K contribution from Plaintiff Thomas Shores paycheck, but, as of July 1, 2024, still had not deposited that money in Plaintiff Thomas Shores' 401k account with The Standard.

      **ANSWER:**    Defendants deny the allegations in paragraph 67 of the Complaint.

68.    As a result, Plaintiff Thomas Shores and other similarly situated employees have lost 401K earnings that they would have accrued on their 401K contributions had White Rock Medical

Center timely deposited those contributions in the 401k accounts of Plaintiff Shores and other similarly situated employees.

**ANSWER:**   Defendants deny the allegations in paragraph 68 of the Complaint.

### III.   COUNT ONE – Violation of the WARN Act

*(Against Defendants Heights Healthcare of Texas, LLC, WRMCLLC, NCP Management, LLC, and National Payroll Services, LLC)*

69.   Defendant Heights Healthcare of Texas, LLC is an employer as defined by the WARN Act.

**ANSWER:**   The allegations in paragraph 69 are denied because they state a legal conclusion to which no response is required.

70.   Defendants Heights Healthcare, National Payroll Services, LLC, NCP Management, LLC, and White Rock Medical Center, LLC are jointly and severally liable under the WARN Act because they are legally a "single employer.".

**ANSWER:**   Defendants deny the allegations in paragraph 70 of the Complaint.

71.   Defendants Heights Healthcare of Texas, LLC, National Payroll Services, LLC, NCP Management, LLC, and White Rock Medical Center, LLC (collectively, the "WRMC Defendants") have common ownership, are all managed by Mirza Baig (who has de facto control over the entities and their employment decisions), they all have the same health and welfare benefit plan rules and policies and other personnel policies, and interdependent operations.   And, they are interchangeably identified as the Plaintiffs' employers in various tax and benefits documents.

**ANSWER:**   Defendants deny the allegations in paragraph 71 of the Complaint.

72.     On April 30, 2024, the WRMC Defendants engaged in a "mass layoff" as defined by the WARN Act by laying off more than 50 employees and more than 33 percent of its workforce at a single site of employment.

**ANSWER:**     The allegations in paragraph 72 are denied because they state a legal conclusion to which no response is required.

73.     Under the WARN Act, the WRMC Defendants were required to give employees 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

**ANSWER:**     The allegations in paragraph 73 are denied because they state a legal conclusion to which no response is required.

74.     The WRMC Defendants failed to give the employees impacted by the mass layoff 60 days' notice of the mass layoff, along with 60 days of wages and 60 days of employee benefits during the 60 day notice period.

**ANSWER:**     The allegations in paragraph 74 are denied because they state a legal conclusion to which no response is required.

75.     No exceptions to the advance notice requirements apply to the circumstances that led the WRMC Defendants to engage in the mass layoff.

**ANSWER:**     Defendants deny the allegations in paragraph 75 of the Complaint.

76.     The circumstances that led to the layoff were not only reasonably foreseeable to the WRMC Defendants but actually fully known to the WRMC Defendants well before the date that notice under the WARN Act would have been required.

**ANSWER:**     Defendants deny the allegations in paragraph 76 of the Complaint.

77.     The WRMC Defendants is therefore liable to Plaintiffs Ezell and Stoll, as well as the class, for 60 days of back pay and 60 days of benefits, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

**ANSWER:**     Defendants deny the allegations in paragraph 77 of the Complaint.

78.     Plaintiffs additionally seek the recovery of reasonable attorney's fees as part of their costs for enforcing their rights under the WARN Act.

**ANSWER:**     Defendants deny the allegations in paragraph 78 of the Complaint.

### IV.   COUNT TWO – Denial of ERISA Medical Plan Benefits
### (ERISA 29 U.S.C. § 1132(a)(1)(b))

*(Against Defendants National Payroll Services, LLC Medical Plan, Heights Healthcare of Texas, LLC, WRMCLLC, NCP Management, LLC, and National Payroll Services, LLC)*

79.     The WRMC Defendants and the National Payroll Services, LLC Medical Plan denied Plaintiffs and the class benefits they were entitled to under Section 1132(a)(1)(b) of ERISA and the health and welfare benefit plans that covered them while they were employees of the WRMC Defendants.

**ANSWER:**     Defendants deny the allegations in paragraph 79 of the Complaint.

80.     The WRMC Defendants had a health and welfare benefits plan, by which it provided health insurance coverage to eligible employees at White Rock Medical Center including Plaintiffs Ezell and Stoll.

**ANSWER:**     Defendants admit the allegations in paragraph 80 of the Complaint.

81.     The WRMC Defendants contend this health and welfare benefits plan was called the National Payroll Services, LLC Medical Plan.

**ANSWER:**     Defendants deny the allegations in paragraph 81 of the Complaint.

82.     Defendant NCP Management, LLC was the policyholder of the health insurance policy that covered the employees of Heights Healthcare of Texas, LLC.

**ANSWER:**   Defendants state that paragraph 82 of the Complaint is incapable of being answered as drafted because more than one insurance policy has been issued to insure benefits provided under the Medical Plan. The written insurance policies identify the policyholder. Defendants deny the allegations in paragraph 82 to the extent that they are incomplete or inconsistent with the written insurance policies.

83.     On information and belief, Heights Healthcare of Texas, LLC, NCP Management, LLC, and National Payroll Services, LLC were all plan sponsors of the health and welfare benefit plan that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage.

**ANSWER:**   Defendants admit that National Payroll Service, LLC was the plan sponsor and administrator for the Medical Plan. Defendants deny the remaining allegations in paragraph 83 of the Complaint.

84.     The WRMC Defendants are accordingly liable under Section 1132(a)(l)(b) of ERISA for all medical plan and health insurance coverage due, but not provided, to Plaintiffs for the months of March and April 2024 and pursuant to COBRA, as well as Plaintiffs' attorney's fees, expenses and costs of court.

**ANSWER:**   Defendants deny the allegations in paragraph 84 of the Complaint.

### V.  COUNT THREE – Breach of Fiduciary Duty - Medical Plan
### (ERISA 29 U.S.C. §§ 1104, 1105, 1109, 1132(a)(1), & 1132(a)(3))

*(Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC*
*NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC*
*Mirza Baig, Terry Fokas, Rashid Syed, and Blue Cross Blue Shield of Texas)*

85.     Defendants Heights Healthcare of Texas, LLC, NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC Mirza Baig, Terry Fokas, Rashid Dyed, and Blue Cross Blue Shield of Texas breached their fiduciary duties to Plaintiffs and the class under Sections 1132(a)(1), 1132(a)(3), 1104, 1105 and 1109 of ERISA.

**ANSWER:**   Defendants deny the allegations in paragraph 85 of the Complaint.

86.     As plan sponsors and plan administrators of the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center, the WRMC Defendants each had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including (A) a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses, and (B) a duty to accurately communicate material facts to beneficiaries and not mislead beneficiaries or misrepresent facts about the terms and administration of a plan.

**ANSWER:**   In response to paragraph 86 of the Complaint, Defendants deny the allegations because they state a legal conclusion to which no response is required.

87.     As CEO of White Rock Medical Center and a managing member of each of the WRMC Defendants, Mirza Baig had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

**ANSWER:**   Defendants deny the allegations in paragraph 56 of the Complaint.

88.     Specifically, Mirza Baig had control over making decisions about the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock

Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

**ANSWER:** Defendants deny the allegations in paragraph 88 of the Complaint.

89. As Chief Restructuring Officer for Heights Healthcare of Texas, LLC, Terry Fokas also had decision-making authority and administrative control over the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

**ANSWER:** Defendants deny the allegations in paragraph 89 of the Complaint.

90. Terry Fokas was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

**ANSWER:** Defendants deny the allegations in paragraph 90 of the Complaint.

91. As Chief Operating Officer for Heights Healthcare of Texas, LLC, Rashid Syed also had decision-making authority and administrative control over the health and welfare benefit plans that provided Plaintiffs Ezell and Stoll and the other employees of White Rock Medical Center their entitlement to health insurance coverage, including the decision whether or not to pay premiums to Blue Cross Blue Shield of Texas.

**ANSWER:** Defendants deny the allegations in paragraph 91 of the Complaint.

92. Rashid Syed was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to use the health

insurance premiums deducted from employees' paychecks to pay for health insurance coverage and not to divert those funds for other purposes or uses.

**ANSWER:**   Defendants deny the allegations in paragraph 92 of the Complaint.

93.     Blue Cross Blue Shield of Texas, as the provider of the policy that covered the employees of White Rock Medical Center, including Plaintiffs Ezell and Stoll, also had a fiduciary duty to notify Plaintiffs Ezell and Stoll that they did not have coverage and/or that their coverage had been retroactively rescinded as soon as Blue Cross Blue Shield of Texas became aware that White Rock Medical Center was in default on its premium payments.

**ANSWER:**   In response to paragraph 93 of the Complaint, Defendants deny the allegations because they state a legal conclusion to which no response is required.

94.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remit health insurance premiums deducted from these employees paychecks to Blue Cross and Blue Shield of Texas, and instead diverting, misusing, and stealing those funds from employees.

**ANSWER:**   Defendants deny the allegations in paragraph 94 of the Complaint.

95.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to remit the employer portion of premiums to Blue Cross and Blue Shield of Texas despite such payments being required by the health and welfare benefit plan.

**ANSWER:**   Defendants deny the allegations in paragraph 95 of the Complaint.

96.     Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical

Center's health and welfare benefit plan by failing to remedy the situation and work out a deal with Blue Cross Blue Shield of Texas to have the insurance coverage of Plaintiffs Ezell and Stoll and other laid off employees reinstated and their medical bills covered per the terms of the applicable plan and policy.

   **ANSWER:**  Defendants deny the allegations in paragraph 96 of the Complaint.

  97. Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to notify Plaintiffs Ezell and Stoll and other laid off employees that their premium payments were not remitted to Blue Cross Blue Shield of Texas, that their health insurance was retroactively canceled or why, or what if anything was being done to rectify the situation.

   **ANSWER:**  Defendants deny the allegations in paragraph 97 of the Complaint.

  98. Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary duty by failing to inform Plaintiffs Ezell and Stoll of material changes to the plan, and failing to be honest about how their health insurance premium payments were being used, whether or not the group health and welfare benefit plan continued to exist following the retroactive termination of the Blue Cross Blue Shield policies, whether their denied medical claims would be paid and when, whether there had been a transition to a new self-funded plan or the details of the terms and administration of claims under that new plan, what coverage or benefits (if any) they would actually received if they elected COBRA and remitted COBRA premiums, and failing to timely provide a new summary plan description as required by 29 U.S.C. 1024(b)(1) despite material reductions in available coverage and despite knowing employees could not make informed decisions about whether to elect COBRA or purchase new insurance plans without clear information.

**ANSWER:**   Defendants deny the allegations in paragraph 98 of the Complaint.

99.   Blue Cross Blue Shield of Texas breached its fiduciary and co-fiduciary duty to Plaintiffs Ezell and Stoll and other employees covered by White Rock Medical Center's health and welfare benefit plan by failing to timely notify Plaintiffs Ezell and Stoll and other laid off employees that they did not have coverage, despite knowing that the other Defendants had not notified said employees of the nonpayment of premiums or retroactive cancellation of their healthcare coverage, and instead delaying such notifications until such time as it sought to charge the employees the full cost of medical services provided to them, and, further, by not making reasonable efforts to remedy the fiduciary breaches of the other Defendants.

**ANSWER:**   Defendants deny the allegations in paragraph 99 of the Complaint.

100.   As a result of Defendants' breach of their fiduciary duties to Plaintiffs and other similarly situated laid off employees, Plaintiffs and similarly situated employees have suffered actual harm including the loss of benefits to which they were otherwise entitled, the exposure to substantial medical bills that otherwise would have been covered, the inability to make decisions to delay medical care or find alternative coverage, the inability to make informed decisions about electing COBRA, and denials of service while medical bills remained outstanding with no information about whether or when those bills would get paid, all of which will cause significant financial and/or medical harm to those employees like Plaintiff Ezell who are in need of additional surgery and medical treatment and/or prescriptions for ongoing medical conditions.

**ANSWER:**   Defendants deny the allegations in paragraph 100 of the Complaint.

101.   As a remedy for Defendants' breach of its fiduciary duties to Plaintiffs, Plaintiff seeks all monetary, injunctive, and equitable relief to which they may be entitled, including an order to use plan assets and premiums paid by employees for purposes of the plan, an order to pay Blue Cross

and Blue Shield of Texas all past premiums due to obtain a reinstatement of coverage for all employees, restitution and payment of all medical bills that should have been paid under the terms and conditions of the applicable plan and policy or under COBRA had employees been able to make informed choices about whether there even was any COBRA coverage to elect and/or an order to extend COBRA elections for a reasonable period of time after clear information is provided as to what coverage (if any) the payment of COBRA premiums will actually buy former employees of the Center, disgorgement of misused premium payments, and surcharge, restitution, and payment of all consequential damages.

**ANSWER:**    Defendants deny the allegations in paragraph 101 of the Complaint.

## VI.  **COUNT FOUR -  Violation of COBRA (ERISA 29 U.S.C. §§ 1161, 1162, 1132(a)(1)**

*(Against Defendants Heights Healthcare of Texas, LLC, WRMC, LLC,*
*NCP Management, LLC, and National Payroll Services, LLC)*

102.    The WRMC Defendants have denied Plaintiffs and the class COBRA coverage to which they are entitled under Sections 1161, 1162, and 1132(a)(1) of ERISA.

**ANSWER:**    Defendants deny the allegations in paragraph 102 of the Complaint.

103.    The WRMC Defendants separately or together as single or joint employers have 20 or more employees and are employers within the meaning of COBRA.

**ANSWER:**    Defendants deny the allegations in paragraph 103 of the Complaint because it states a legal conclusion.

104.    Federal law required the WRMC Defendants to offer COBRA benefits (continued healthcare coverage) to Plaintiffs and to the other employees impacted by the mass layoff.

**ANSWER:**    Defendants deny the allegations in paragraph 104 of the Complaint because it states a legal conclusion.

105.    Federal law required the WRMC Defendants to report the qualifying event of Plaintiffs' and the class' terminations to Defendants' plan administrator, National Payroll Services, LLC, within 30 days of their termination.

**ANSWER:**    Defendants deny the allegations in paragraph 105 of the Complaint because it states a legal conclusion.

106.    Federal law required the WRMC Defendants' plan administrator, National Payroll Services, LLC, to then provide Plaintiffs notice of their eligibility to elect continued health insurance coverage under COBRA within 14 days of receiving the report.

**ANSWER:**    Defendants deny the allegations in paragraph 106 of the Complaint because it states a legal conclusion.

107.    If the WRMC Defendants, including National Payroll Services, LLC as the plan administrator, had complied with these requirements, each of the 158 employees laid off on April 30, 2024 would have received a COBRA notice by June 13, 2024.

**ANSWER:**    Defendants deny the allegations in paragraph 107 of the Complaint because it states a legal conclusion.

108.    Plaintiff Ezell, however, did not receive a COBRA notice until June 26, 2024.

**ANSWER:**    Defendants deny that Plaintiffs were not provided with a timely COBRA notice.

109.    The WRMC Defendants and National Payroll Services, LLC as the plan administrator, are therefore liable to Plaintiff Ezell and all other similarly situated employees for $110 per day penalties under 29 U.S.C. § 1132(c), and for Plaintiff's reasonable attorney fees and costs.

**ANSWER:**    Defendants deny the allegations in paragraph 109.

### IV.    COUNT FIVE – Denial of ERISA 401K Plan Benefits
### (ERISA 29 U.S.C. § 1132(a)(1)(b))

*(Against Defendants NPS Management, AE of Secure Your Retirement 401K Plan, Heights Healthcare of Texas, LLC, WRMCLLC,*
*NCP Management, LLC, and National Payroll Services, LLC)*

110.    The WRMC Defendants and the NPS Management, AE of Secure Your Retirement 401k Plan denied Plaintiffs and the class 401K benefits they were entitled to under Section 1132(a)(1)(b) of ERISA and the health and welfare benefit plans that covered them while they were employees of the WRMC Defendants.

**ANSWER:**    Defendants deny the allegations in paragraph 110 of the Complaint.

111.    The WRMC Defendants had a 401K Plan, by which it 401K retirement savings accounts to eligible employees at White Rock Medical Center including Plaintiff Shores.

**ANSWER:**    Defendants admit that eligible employees could participate in the 401K Plan.

112.    On information and belief, this 401K Plan was called the NPS Management, AE of Secure Your Retirement 401K Plan.

**ANSWER:**    Defendants deny the allegations in paragraph 112 of the Complaint.

113.    On information and belief, the WRMC Defendants were all plan sponsors of the 401K plan that provided Plaintiff Shores and the other similarly situated employees of White Rock Medical Center their 401K retirement savings accounts.

**ANSWER:**    Defendants deny the allegations in paragraph 110 of the Complaint because it states a legal conclusion.

114.    By law, 401K contributions deducted from employee paychecks become assets of the 401K plan within 15 days of the issuance of the applicable paycheck.

**ANSWER:**    Defendants deny the allegations in paragraph 114 of the Complaint because it states a legal conclusion.

115.    By law and under the 401K plan at issue, the WRMC Defendants and the 401K Plan were required to deposit the contributions deducted from the paychecks of Plaintiff Thomas Shores and other employees into The Standard accounts of those employees within 15 days so that this money could start earning returns.

**ANSWER:**    Defendants deny the allegations in paragraph 115 of the Complaint because it states a legal conclusion.

116.    Instead, the WRMC Defendants and the 401K Plan failed to timely deposit numerous 401K contributions deducted from employee paychecks into the employee's 401K accounts with The Standard on time, and denied employees the earnings they otherwise would have received if these 401K contributions had been timely deposited with The Standard.

**ANSWER:**    Defendants deny the allegations in paragraph 116 of the Complaint.

117.    The WRMC Defendants are accordingly liable under Section 1132(a)(1)(b) of ERISA for all 401K earnings and returns due to Plaintiffs for the time during which these 401K contributions were missing and/or misused and not deposited in employees' 401K accounts, as well as Plaintiffs' attorney's fees, expenses and costs of court.

**ANSWER:**    Defendants deny the allegations in paragraph 117 of the Complaint.

## V.  COUNT SIX – Breach of Fiduciary Duty - 401K Plan
### (ERISA 29 U.S.C. §§ 1104, 1105, 1109, 1132(a)(1), & 1132(a)(3))

*(Against ALL Defendants Heights Healthcare of Texas, LLC, WRMC, LLC, NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC, Mirza Baig, Terry Fokas, Rashid Syed, and Blue Cross Blue Shield of Texas)*

118.    Defendants Heights Healthcare of Texas, LLC, NCP Management, LLC, National Payroll Services, LLC, White Rock Medical Center, LLC, Mirza Baig, Terry Fokas, and Rashid

Syed breached their fiduciary duties to Plaintiffs and the 401K class under Sections 1132(a)(1), 1132(a)(3), 1104, 1105 and 1109 of ERISA.

**ANSWER:**   Defendants deny the allegations in paragraph 118 of the Complaint.

119.   As plan sponsors and plan administrators of the 401K Plan that provided Plaintiff Shores and other employees of White Rock Medical Center with 401K retirement savings accounts, the WRMC Defendants each had a fiduciary responsibility to the employees who were beneficiaries of that plan, including a duty to timely segregate and deposit the 401k contributions deducted from employees' paychecks into employees' 401K accounts within 15 days of the date those 401K deductions otherwise would have been payable to employees in cash,  and not to divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**   Defendants deny the allegations in paragraph 119 of the Complaint.

120.   As CEO of White Rock Medical Center and a managing member of each of the WRMC Defendants, Mirza Baig had a fiduciary responsibility to the employees who were beneficiaries of the 401K, including a duty to timely segregate and deposit the 401k contributions deducted from employees' paychecks into employees' 401K accounts within 15 days of the date those 401K deductions otherwise would have been payable to employees in cash, and not to divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**   Defendants deny the allegations in paragraph 120 of the Complaint.

121.   Specifically, Mirza Baig had control over making decisions about the 401K plan and employee 401K contributions, including the decision whether or not to timely segregate and deposit those 401k contributions into employees' 401K accounts or to instead divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**   Defendants deny the allegations in paragraph 121 of the Complaint.

122.     As Chief Restructuring Officer for Heights Healthcare of Texas, LLC, Terry Fokas also had decision-making authority and administrative control over the 401K plan and employee 401K contributions, including the decision whether or not to timely segregate and deposit those 401k contributions into employees' 401K accounts or to instead divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**     Defendants deny the allegations in paragraph 122 of the Complaint.

123.     Terry Fokas was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to timely segregate and deposit the 401k contributions deducted from employees' paychecks into employees' 401K accounts within 15 days of the date those 401K deductions otherwise would have been payable to employees in cash, and not to divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**     Defendants deny the allegations in paragraph 123 of the Complaint.

124.     As Chief Operating Officer for Heights Healthcare of Texas, LLC, Rashid Syed also had decision-making authority and administrative control over the 401K plan and employee 401K contributions, including the decision whether or not to timely segregate and deposit those 401k contributions into employees' 401K accounts or to instead divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**     Defendants deny the allegations in paragraph 124 of the Complaint.

125.     Rashid Syed was therefore also a fiduciary who had a fiduciary responsibility to the employees who were beneficiaries of that plan and that coverage, including a duty to timely segregate and deposit the 401k contributions deducted from employees' paychecks into employees' 401K accounts within 15 days of the date those 401K deductions otherwise would have been payable to employees in cash, and not to divert, misuse, or delay the deposit of those plan assets.

**ANSWER:**    Defendants deny the allegations in paragraph 125 of the Complaint.

126.    Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Shore and other employees covered by White Rock Medical Center's 401K Plan by failing to timely segregate and deposit 401k contributions deducted from employee paychecks and by instead misusing, diverting, and delaying the deposit of these plan assets.

**ANSWER:**    Defendants deny the allegations in paragraph 126 of the Complaint.

127.    Baig, Fokas, Syed, and the WRMC Defendants breached their fiduciary and co-fiduciary duties to Plaintiffs Shore and other employees covered by White Rock Medical Center's 401K Plan by taking actions that denied employees the 401K earnings and returns to which they were entitled.

**ANSWER:**    Defendants deny the allegations in paragraph 127 of the Complaint.

128.    As a result of Defendants' breach of their fiduciary duties to Plaintiff Shores and other similarly situated employees, Plaintiff Shores and similarly situated employees have suffered actual harm including the loss of benefits, earnings, and returns to which they were otherwise entitled.

**ANSWER:**    Defendants deny the allegations in paragraph 128 of the Complaint.

129.    As a remedy for Defendants' breach of its fiduciary duties to Plaintiffs, Plaintiff seeks all monetary, injunctive, and equitable relief to which they may be entitled, including an order to provide restitution or surcharge in the amount of the benefits, earnings, and returns Plaintiff and other similarly situated attorneys would have received but for Defendants' breaches of their fiduciary duties.

**ANSWER:**    Defendants deny the allegations in paragraph 129 of the Complaint.

## VI. COUNT 7 -  Fraudulent Transfer of Assets

*(Against Heights Healthcare of Texas, LLC and White Rock Medical Center, LLC)*

130.   Plaintiffs bring this claim pursuant to the Uniform Fraudulent Transfer Act (Tex. Bus. & Comm. Code § 24.001, *et seq.*) ("the Act").

**ANSWER:**   Defendants deny the allegations in paragraph 130 of the Complaint.

131.   Plaintiffs are creditors of Heights Healthcare of Texas, LLC within the meaning of the Act, and have a claim against Heights Healthcare of Texas, LLC for payment within the meaning of the Act. (Tex. Bus. & Comm. Code  § 24.002(3)-(4)).  Heights Healthcare of Texas, LLC is a debtor to Plaintiffs within the meaning of the Act.  (Tex. Bus. & Comm. Code  § 24.002(6)).

**ANSWER:**   Defendants deny the allegations in paragraph 131 of the Complaint.

132.   Defendants Baig, Syed, Fokas, and White Rock Medical Center, LLC (f/k/a Pipeline East Dallas, LLC) are "insiders" of Heights Healthcare of Texas, LLC within the meaning of the Act, in that at the time of the transaction in question, they were "persons in control" or "affiliates" of Heights Healthcare of Texas, LLC.

**ANSWER:**   Defendants deny the allegations in paragraph 132 of the Complaint.

133.   Upon information and belief, Heights Healthcare of Texas, LLC is in the process of transferring some or all of its assets (including but not limited to the Heights Hospital in Houston, Texas) to insiders.

**ANSWER:**   Defendants deny the allegations in paragraph 133 of the Complaint.

134.   Heights Healthcare of Texas, LLC recently furloughed a large number of its employees in Houston, Texas.

**ANSWER:**   Defendants deny the allegations in paragraph 134 of the Complaint.

135.   Heights Healthcare of Texas, LLC cited, as the reason for the furlough, its need to transfer the ownership of Heights Hospital from HHT to WRMC, LLC.

**ANSWER:**    Defendants admit that communications to employees are set forth in writing and provide the best evidence of their contents. Defendants deny the remaining allegations in paragraph 135 of the Complaint.

136.    SRC also recently obtained a Temporary Injunction against HHT/WRMC, enjoining HHT/WRMC from engaging in various activities that would amount to fraudulent transfer.  This was needed due to WRMC's apparently ongoing attempt to avoid paying SRC. Specifically, HHT/WRMC was telling its own creditors to pay them via a separate bank account, so that SRC would not find out about their receipt of this income. As a result of this behavior, the Temporary Injunction gives access and control to SRC over HHT/WRMC's bank accounts.  This behavior indicates a knowing plan to hide and transfer assets from creditors.

**ANSWER:**    Defendants admit that arbitration or court orders and pleadings are set forth in writing and provide the best evidence of their contents. Defendants deny the allegations in paragraph 136 of the Complaint.

137.    HHT's transfer of assets would be fraudulent as to Plaintiffs.  Their claims arose before any transfers were made, and Heights Healthcare of Texas, LLC is making, or has made, the transfers with the actual intent to hinder, delay, or defraud Plaintiffs.

**ANSWER:**    Defendants deny the allegations in paragraph 137 of the Complaint.

138.    At the time of said transfers, Heights Healthcare of Texas, LLC believed that it was about to incur debts beyond its ability to pay (specifically, a judgment debt owed to Plaintiffs).

**ANSWER:**    Defendants deny the allegations in paragraph 138 of the Complaint.

139.    Furthermore, the transfer bears multiple "badges of fraud," as follows:

    a.   the assets will be or were transferred to insiders;

    b. Heights Healthcare of Texas, LLC, through its insiders, has retained or will retain possession or control of the assets after the transfer;

    c. before the transfer was made, Heights Healthcare of Texas, LLC was threatened with suit by Plaintiffs;

    d. Heights Healthcare of Texas, LLC will likely become insolvent shortly after the transfer is made; and

    e. the transfer occurred shortly before a substantial debt was to be incurred (specifically, a judgment in favor of Plaintiffs).

    **ANSWER:**      Defendants deny the allegations in paragraph 139 of the Complaint.

140.    Plaintiffs seek all remedies to which they are entitled as a creditor under Tex. Bus. & Comm. Code § 24.008, including: (a) avoidance of the transfers as necessary to satisfy their claims; (b) an attachment or other provisional remedy against the transferred assets, and other property of the recipients of the assets; (c) an injunction against further disposition of the assets; (d) appointment of a receiver to take charge of the transferred assets, and of all other property of Heights Healthcare of Texas, LLC; and (e) any other relief to which she may be entitled.

    **ANSWER:**    Defendants deny the allegations in paragraph 140 of the Complaint.

141.    To the extent that the receiver is unable to take charge of any liquid assets to satisfy Plaintiffs claims, Plaintiffs seeks a seizure of Heights Healthcare of Texas, LLC's non-liquid assets, to include its Business Personal Property located at 9440 Poppy Drive in Dallas, Texas (valued at approximately $5,845,960.00).

    **ANSWER:**    Defendants deny the allegations in paragraph 141 of the Complaint.

## VII.  **CLASS ACTION ALLEGATIONS**

142.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:**    Defendants admit that Plaintiffs purport to bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendants deny that the requirements of Rule 23 are met or that class action status is otherwise appropriate.

143.    Plaintiffs Ezell and Stoll were discharged without cause on their part and are "affected employees" within the meaning of Section 2101(a)(5) of Title 29 of the United States Code (the WARN Act).

**ANSWER:**    Defendants deny the allegations in paragraph 143 of the Complaint.

144.    Plaintiffs Ezell and Stoll bring their WARN Act claims on behalf of themselves and, pursuant to Section 2104(a)(5) of Title 29 of the United States Code and Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of all other similarly situated "affected employees" [as that term is defined in Section 2101(a)(5) of Title 29 of the United States Code] who worked at the White Rock Medical Center facility.

**ANSWER:**    Defendants admit that Plaintiffs attempt to seek to pursue a class action. Defendants deny that Plaintiffs' request for class certification and relief is appropriate.

145.    The class of "affected employees" who worked at the White Rock Medical Center facility [as that term is defined in Section 2101(a)(5) of Title 29 of the United States Code] are so numerous that joinder of all such persons is impracticable within the meaning of Federal Rule of Civil Procedure 23(a)(1).

**ANSWER:**    Defendants deny the allegations in paragraph 145 of the Complaint.

146.    Similarly, Plaintiff Ezell and Stoll were denied medical plan benefits under ERISA along with approximately 458 other White Rock Medical Center employees, and subjected to

breaches of fiduciary duty in the form of misuse and mismanagement of medical plan assets and misinformation about their healthcare coverage or lack thereof.

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 146 of the Complaint.

   147. Similarly, Plaintiff Shores and hundreds of other White Rock Medical Center employees who were enrolled in White Rock Medical Center's 401K plans were denied 401K plan benefits and earnings and subject to mismanagement and misuse of their 401K contributions.

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 147 of the Complaint.

   148. There are questions of law or fact common to this class within the meaning of Federal Rule of Civil Procedure 23(a)(2).

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 148 of the Complaint.

   149. The claims of the Named Plaintiffs are typical of the claims of the class(es) they represent within the meaning of Federal Rule of Civil Procedure 23(a)(3).

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 149 of the Complaint.

   150. The Named Plaintiffs and undersigned counsel will fairly and adequately protect the interests of the class within the meaning of Federal Rule of Civil Procedure 23(a)(4).

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 150 of the Complaint.

   151. The questions of law or fact common to this class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy referenced herein within the meaning of Federal Rule of Civil Procedure 23(b)(3).

   **<u>ANSWER:</u>** Defendants deny the allegations in paragraph 151 of the Complaint.

   152. The proposed classes are defined as follows:

    (A) Named Plaintiffs Ezell and Stoll, and all other similarly situated employees of the WRMC Defendants who were employed in the Dallas, Texas

"White Rock Medical Center" facility on April 29, 2024, and who were first notified on or about April 30, 2024 of their termination and who did not receive 60 days' notice of the layoff, or 60 days of pay and benefits in lieu thereof; and

(B)     Named Plaintiffs Ezell and Stoll, and all other similarly situated former and current employees of the WRMC Defendants who are or were employed in the Dallas, Texas "White Rock Medical Center" facility after February 28, 2024, and who had premiums for the employer-sponsored Blue Cross Blue Shield health insurance plan deducted from their paychecks after March 1, 2024, and whose health insurance coverage was  canceled or rescinded as a result of the WRMC Defendants' failure to remit premium payments to Blue Cross Blue Shield.

(C)     Named Plaintiff Ezell, and all other similarly situated former employees of the WRMC Defendants, who were employed in the Dallas, Texas "White Rock Medical Center" facility on April 29, 2024, and who were first notified on or about April 30, 2024 of their termination and who did not receive COBRA Notices by June 13, 2024;

(D)     Named Plaintiff Shores, and all other similarly situated former and current employees of the WRMC Defendants who are or were employed in the Dallas, Texas "White Rock Medical Center" facility after February 28, 2024, who were enrolled in the 401K plan, and who had 401K contributions deducted from their paychecks that were not then deposited into their 401K accounts within 15 days of the date their paychecks issued.

**ANSWER:**   Defendants admit that Plaintiffs attempt to propose classes in paragraph 152 of the Complaint. Defendants deny that Plaintiffs' proposed classes are appropriate, and further deny that Plaintiffs' request for class certification and relief is appropriate.

153.   Plaintiffs reserve the right to amend and refine the class definitions above or to add classes and/or subclasses as litigation progresses.

**ANSWER:**   Defendants deny that any proposed classes are appropriate, and further deny that Plaintiffs' request for class certification and relief is appropriate

## VIII.  JURY DEMAND

154.   In accordance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues raised in this civil action that are triable of right (or choice) by a jury.

**ANSWER:**     Defendants deny that a jury trial is available under ERISA or the WARN Act and therefore deny the allegations in paragraph 154 of the Complaint.


## DEFENSES, INCLUDING AFFIRMATIVE DEFENSES

Defendants assert the following defenses without assuming the burden of proof or persuasion as to any them, except as required by law.

1.      Any allegation not specifically admitted in this Answer is now denied.

2.      Plaintiffs' claims, in whole or in part, fail to state a claim upon which relief can be granted.

3.      Plaintiffs' claims are barred as a result of Plaintiffs' failure to satisfy the terms of the Medical Plan in that Plaintiffs failed to prove that Plaintiffs are entitled to any benefits under the Medical Plan that have not been reimbursed.

4.      Any benefits due under the Medical Plan are subject to offset, integration, or other deductions or adjustments in accordance with the Medical Plan's terms.

5.      Plaintiffs are limited to the evidence and arguments presented during the administrative process for claims submitted for reimbursement under the Medical Plan or 401K Plan.

6.      ERISA provides the exclusive mechanism for resolution of Plaintiffs' claims. To the extent Plaintiffs make claims or seeks remedies not provided by ERISA, those claims and/or remedies are preempted by ERISA.

7.      Defendants assert each and every provision of the Medical Plan and 401K Plan that is or may be construed as an affirmative defense.

8.      Plaintiffs request for jury trial must be stricken as no right to a jury trial is available under ERISA or under the WARN Act.

9.      Defendants deny that they are liable, obligated, or indebted to Plaintiff for any sums, as prayed for in Plaintiffs' Complaint, or otherwise, upon any basis in law or in fact.

10.     Plaintiffs' Complaint is barred, in whole or in part, by the doctrines of unclean hands, estoppel, laches, ratification, and/or waiver.

11.     Plaintiffs failed to exercise reasonable diligence to mitigate their alleged damages, if any.

12.     Any damages allegedly sustained by Plaintiffs were not actually or proximately caused by Defendants.

13.     The damages and relief sought by Plaintiffs are, in whole or in part, not legally authorized.

14.     Plaintiffs' claims are barred to the extent they seek relief or not available under Section 502(a)(1)(B) of ERISA.

15.     Plaintiffs' claims and remedies should be limited to those allowed under Section 502(a)(1)(B) of ERISA, and further claims and remedies should be dismissed.

16.     Plaintiffs' claim under ERISA Section 502(a)(3) fail to state a claim upon which relief can be granted and is an improper repackaged and duplicative claim for benefits.

17.     Plaintiffs' claim for monetary penalties is barred because Defendants did not intentionally withhold or fail to provide any notice or documents.

18.     Plaintiffs' Complaint is barred to the extent Plaintiffs have failed to join a party that appears indispensable to their claims.

19.     The individual Defendants are not proper parties.

20.     Plaintiffs' claims are barred, in whole or in part, because Defendants at all times acted reasonably and in good faith, and did not engage in any conduct that was malicious, egregious, in bad faith, grossly negligent, or in willful or reckless disregard of Plaintiffs' legal rights.

21.     To the extent that the Complaint refers to or quotes from external documents, statutes, or other sources, Defendants responses may refer to such materials for a full and accurate statement of its contents; however, Defendants references are not intended to be, and should not be construed as, an admission that the cited materials are: (a) correctly cited or quoted by Plaintiff; or (b) relevant to this, or any other, action.

22.     Plaintiffs' claims fail because the conduct alleged caused no damages to Plaintiffs, the Medical Plan, the 401K Plan, or the participants of the Plans.

23.     Plaintiffs' claims are barred as a result of the failure to exhaust administrative remedies.

24.     Defendants have not committed a violation of the federal WARN Act.

25.     Defendants did not employ Plaintiffs and/or are not "covered employers" under the applicable WARN Act statutes, and therefore Plaintiffs lack standing to sue these entities for the alleged violations in the Complaint.

26.     Plaintiffs' claims, and the claims of any putative class member, are barred by the faltering company defense as set forth in 29 U.S.C. § 2102(b)(1).

27.     Plaintiffs' claims, and the claims of any putative class member, are barred by the unforeseen business circumstances defense as set forth in 29 U.S.C. § 2102(b)(2)(A).

28.     If notice had been required under the WARN Act, which Defendants deny, Plaintiffs and other putative class members received as much notice as was practicable in light of the business circumstances that were not reasonably foreseeable, and Plaintiffs and other putative class members were given written notice explaining the basis for reducing the notification period.

29.     Any back pay liability alleged by Plaintiff "and those similarly situated" should be reduced by the amount of any severance payments made by Defendants to any Plaintiffs and similarly situated employees pursuant to 29 U.S.C. § 2104(a)(2).

30.     To the extent that Defendants are found to have violated the WARN Act, any act or omission was in good faith and Defendants had reasonable grounds for believing the act or omission was not a violation of the WARN Act. Accordingly, the Court in its discretion, should reduce the amount of any liability of Defendants pursuant to 29 U.S.C. §2104(a)(4).

31.     Plaintiffs lack standing, individually and on behalf of the members of the purported class, to assert claims against Defendants.

32.     Claims by Plaintiffs and members of the purported class, the existence of which is expressly denied, are not sufficiently common to sustain a class action under Federal Rule of Civil Procedure 23.

33.     If certified, this matter would be unmanageable as a class action.

34.     For all claims in the Complaint, individual issues predominate over common issues, if any, for the alleged class, the existence of which is expressly denied.

35.     The claims of the individuals included in the purported class, the existence of which is expressly denied, are subject to individualized defenses, and class treatment would violate Defendants' rights to due process.

36.     To the extent that Defendants failed to comply with any aspect of the law, Defendants acted in good faith and with reasonable grounds to believe its actions were not in violation of applicable law.

37.     Plaintiffs and the members of purported class did not suffer any harm, damages, or prejudice as a result of their alleged violations of COBRA.

38.     Plaintiffs' claims are barred as a result of their failure to tender a COBRA premium payment and/or their knowledge, acts, omissions, and conduct.

39.     Any alleged losses or penalties should be offset by the cost savings of Plaintiff and the purported class members.

40.     The claims against the individual Defendants fail to state a claim upon which relief can be granted.

41.     The Defendants were not fiduciaries under ERISA.

42.     The individual Defendants are not proper parties under ERISA, COBRA, the Warn Act, of Tex. Bus. & Comm. Code.

43.     Plaintiffs are not creditors under the Tex. Bus. & Comm. Code.

44.     Defendants are not insiders under Tex. Bus. & Comm. Code.

45.     Plaintiffs' claims are barred, in whole or part, by the applicable statutory and/or Plan limitation periods.

46.     Alternatively, to the extent the Court determines that Plaintiffs are entitled to benefits under the Medical Plan, such benefits are subject to all terms and conditions of the Medical Plan.

47.     Defendants presently have insufficient knowledge or information from which to form a belief as to whether it may have additional affirmative or other defenses available. Defendants

reserve the right to assert additional defenses as deemed necessary and as permitted by the Federal Rules of Civil Procedure and the rules of this Court.

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice and that judgment be entered in Defendants' favor on such claims; that Defendants be awarded their costs of suit incurred herein, including reasonable attorneys' fees; and that the Court grant Defendants all other and further relief, at law or in equity, to which they are justly entitled.

Dated: August 27, 2024                    Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Eric P. Mathisen*_____
Eric P. Mathisen
15 West South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: (801) 658-6048
Email: eric.mathisen@ogletree.com

-and-

John M. Barcus
Preston Commons West
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: (214) 313-2902
Email: john.barcus@ogletree.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies and affirms that on August 27, 2024, he electronically filed the foregoing Answer and Affirmative Defenses with the Clerk of the Court, via the Court's CM/ECF system, which will serve an electronic copy of same on all counsel registered to receive electronic service in this matter.

*/s/ Eric P. Mathisen*
Eric P. Mathisen